167 So. 561

## ALBERT v. HENRY.

### 8 Div. 693.

Supreme Court of Alabama.

April 16, 1936.

160

J. A. Lusk & Son, of Guntersville, for appellant.

D. Isbell, of Guntersville, for appellee.

BROWN, Justice.

This bill was filed by the appellant, the administratrix of the estate of F. B. Albert, deceased, to compel contribution by Oscar L. Henry as a cosurety of said Albert on a promissory note or bond under seal, executed by F. C. Albert and James L. Albert, said F. B. Albert, and said Henry to A. J. Sulcer.

The bill alleges that F. C. and James Albert were the principals on said note, and that complainant's intestate and said Henry were cosureties thereon; that the principals failed to pay the note; that F. B. Albert made two or three small payments thereon during his lifetime, and after his death and the appointment of complainant as the administratrix of his estate, the claim was duly filed by the administrator of said Sulcer; that it was approved by a decree of the circuit court, in equity, to which the estate had been removed for administration and ordered to be paid to the personal representative of A. J. Sulcer, or his attorney, the sum of $1,263.91, the amount due on said paper; that said payment was reported to the court and duly ratified; that said Henry declined to pay any part of said indebtedness, and that he is justly due complainant $631.91 as his pro rata share; that the principals on said note are wholly insolvent.

Henry filed an answer in which he alleged: "That it was the agreement and intention of the parties on the note including the two young Alberts and their father and the defendant, Oscar L. Henry, that he was to be the supplemental surety of all the Alberts, and was not to be the cosurety of F. B. Albert on the note of his two sons. That with this agreement, understanding and intention of all the parties, the note was signed by defendant Oscar L. Henry, and he wrote the word surety after his name, meaning surety for all three" defendants.

Before the testimony was taken the defendant, Oscar L. Henry, died, and there was a revivor against his estate and his personal representative was made a party. James L. Albert also died before the testimony was taken, which left surviving of all the parties to the transaction, F. C. Albert.

On submission for final decree on the pleadings and proof, the court entered a decree dismissing the bill, and from that decree the complainant has prosecuted this appeal.

By oversight or for reasons not appearing, the original note, though it was in the hands of the complainant during the taking of the testimony, was not noted as an item in the evidence.

Both parties noted the testimony of F. C. Albert, John T. Sulzby, and D. Isbell.

The evidence shows that in the year 1925 F. C. and James L. Albert, brothers, and the sons of F. B. Albert, deceased, were in the business of distributing for the Texas Oil Company at Guntersville, Ala.; that they were responsible to said company for accounts accruing on credits extended to their customers; and that some of said accounts were not collectible, and the company was pressing said brothers to make said accounts good. One of the boys, F. C., requested the father to indorse their note to the First National Bank of Guntersville, of which the elder Albert was president. He advised them he could not do this because of his relation to the bank, and suggested that they obtain a loan from Sulcer, and stated that he would sign with them or indorse for them. Sulcer, on be-

ing approached, agreed to make the loan if they would obtain the signature of one of the older settlers, the Henrys or Jordans, and was asked if the signature of Oscar Henry would be satisfactory, and he signified that it would be satisfactory. The elder Albert prepared the note at the bank and it was there signed by F. C. Albert, J. L. Albert, and F. B. Albert.

F. C. Albert testified: "I asked him [Sulcer] to make me the loan and he agreed to do so. I later returned to him with a note signed by myself, James L. Albert and my father. He then asked me to get some older settler like the Henrys or Jordans to endorse the note also. I asked him if Oscar Henry would be sufficient and he said that it would. Yes, after the first conversation with Sulcer, my father asked me if I had talked with Mr. Henry. I told him I had not, but would do so with his permission. He told me to go and see what they said. * * * I took the note to Oscar Henry and asked him to sign it and he asked in substance, 'What if you boys fail to pay?' I told him in substance that father had already signed the note and would protect him. *He wanted further assurance and I left the note either at the bank or with Oscar Henry for him to talk with father.* Later in the same day, I went to the bank and got the note which had then been signed by Henry." (Italics supplied.)

■ The evidence is without dispute that when the note was presented to Henry for his signature it had been signed by all three of the Alberts, and that when Henry signed he wrote following his signature the word "surety." In the copy of the note made Exhibit A to the bill, it appears that the word "surety" also followed the name of F. B. Albert; but there is at least a suggestion in the testimony given on cross-examination by the witness Isbell, that the word "surety" did not follow the name of F. B. Albert when Henry affixed his signature thereto. The substance of the statement of Isbell is that Mr. Henry stated that he did not notice that it was so signed by F. B. Albert. While the testimony of Isbell is hearsay, it was offered by both parties and was due to be considered by the court.

The note, as we have heretofore stated, was not in evidence. The evidence clearly justifies an inference that Henry attached his signature to the note as a supple-

mental surety, on the assurance and obligation of F. B. Albert to hold him harmless.

■ In such circumstances, the validity and legality of the obligation not being questioned, it would inequitable to require the estate of Henry to contribute. In such circumstances F. B. Albert was as to Henry a principal on the note. 50 C.J. p. 313, §§ 528, 529; Code 1923, § 9548. And though F. B. Albert and his personal representative have paid the indebtedness, Albert's estate is not entitled to contribution from Henry or his estate. 50 C.J. p. 314, § 531.

The payment of the indebtedness by Albert and his personal representative was but complying with the obligation assumed by Albert, and when the debt was so paid the contract between Albert and Henry became an executed contract.

The bill was dismissed without error.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.